# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex. rel.* § | |
| GEORGE GAGE, § | |
|                       Relator, § | |
| § | |
| V. § | Case No. A-16-CV-803 SS |
| § | |
| ROLLS-ROYCE NORTH AMERICA § | |
| INC., ROLLS-ROYCE DEUTSCHLAND § | |
| LTD. & CO. KG, AND SIERRA NEVADA § | |
| TECHNICAL SERVICES, LLC f/k/a § | |
| ORION AIR GROUP, LLC, § | |
|                       Defendants. § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE SAM SPARKS
          SENIOR UNITED STATES DISTRICT JUDGE

On November 15, 2017, the District Judge referred to the undersigned (1) all pending and future non-dispositive motions in this case for resolution, and (2) all pending and future dispositive motions for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(A) and (b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules. Pursuant to that order, the Court has before it the following motions filed in this case:

- Rolls-Royce North America Inc.'s and Rolls-Royce Deutschland, Ltd. & Co. KG's Motion to Dismiss Relator's First Amended Complaint and Memorandum in Support Thereof (Dkt. No. 58), and the related Response and Reply briefs;

- Rolls-Royce North America Inc.'s and Rolls-Royce Deutschland, Ltd. & Co. KG's Motion to Disqualify Their Former Attorney, Donald E. Little, From Representing George Gage and Memorandum in Support Thereof (Dkt. No. 59), and the related Response and Reply briefs;

- Relator's Motions to File Under Seal Documents and Supplement Law and Facts (Dkt. Nos. 81 & 82); and

- Rolls-Royce North America Inc.'s and Rolls-Royce Deutschland, Ltd. & Co. KG's Motion to Strike and Supplemental Motion to Strike (Dkt. Nos. 83 & 84).

The Court held a hearing on the motions on December 4, 2017, and received additional briefing thereafter.

## I. GENERAL BACKGROUND

Relator George Gage has brought this *qui tam* action against Rolls-Royce North America Inc., Rolls-Royce Deutschland, Ltd. & Co. KG. (collectively "Rolls-Royce"), and Sierra Nevada Technical Services, L.L.C.[1] Although not entirely clear based on the rambling nature of his pleadings, Gage generally alleges that Defendants were somehow involved with "the use of non-airworthy, non-conforming aircraft parts" from a civilian aircraft that experienced a "hard landing" in Nova Scotia on November 11, 2007, which were ultimately used on a United States Air Force aircraft, and further that those parts failed while the USAF aircraft was in flight in Afghanistan on June 28, 2010. Dkt. No. 17 at ¶ 1. Gage further alleges that Rolls-Royce submitted false documents and invoices for payment to the United States Air Force under its subcontract agreement with Sierra Nevada in violation of the False Claims Act.

As the District Court is well aware, this is the *third* lawsuit that Gage has participated in stemming from the alleged use of defective parts taken from the Nova Scotia plane, and used on the USAF plane. The primary background facts to this case, as well as the two prior cases, were summarized by the Fifth Circuit in a 2015 decision:

> In 2009, Northrop Grumman contracted with the United States Air Force ("USAF") to provide the Battlefield Airborne Communication Node ("BACN")—a system critical to interservice troop communication—and to operate three Bombardier

---

[1] According to Gage's Complaint, Sierra Nevada Technical Services, L.L.C. now owns Orion Air Group, L.L.C.

aircraft containing the BACN. Orion Air Group, L.L.C., in turn, subcontracted with Northrop to operate and maintain the BACN aircraft. Gage alleges that the critical nature of the BACN missions and the heavy use of the aircraft required Orion to acquire replacement parts, many of which were not readily available from original equipment manufacturers. One of the sources to which Orion looked was CSS [Davis S R Aviation, L.L.C., d/b/a Challenger Spares and Support and Challenger Repair Group, LLC].

In April 2008, CSS, assisted by Bombardier, acquired a civilian Bombardier aircraft (Serial Number 9211) that had crash landed in Canada (the "9211 Aircraft"). Gage alleges that parts from the 9211 Aircraft, including Rolls Royce engines and a Variable Frequency Generator ("VFG"), were defective and could present a potential safety risk. Indeed, many parts were listed as "suspect" on a Worldwide Communication issued by Rolls Royce following the crash. Gage alleges that CSS sold parts from the 9211 Aircraft to Orion, which installed them on BACN aircraft. On June 28, 2010, an Orion-operated BACN aircraft containing the 9211 Aircraft's VFG suffered a "catastrophic incident" over Afghanistan after the VFG exploded.

*Gage v. Davis S.R. Aviation, L.L.C., et al.*, 623 F. App'x 622, 624 (5th Cir. July 14, 2015), *cert. denied*, 136 S.Ct. 984 (2016).

## 2010 Lawsuit Against Rolls-Royce

In May 2010, CSS sued Rolls-Royce in this Court, complaining about Rolls-Royce's "Worldwide Communication" referring to the engine parts as "suspect," contending that such statements were false, and were made in an attempt to prevent CSS from selling the engines on the open market. *See Davis SR Aviation, LLC, et al v. Rolls-Royce North America, Inc., et al*, A-10-CV-367 LY (W.D. Tex. 2010) (*Davis I*). CSS alleged that it was damaged because it was forced to lease the engines to Orion for less than CSS would have received had Rolls-Royce not issued the advisory. Notably, Gage served as an expert witness for Rolls-Royce in *Davis I* and reviewed evidence counsel provided to him relating to Rolls-Royce engines, parts, and accessories from Aircraft 9211. The attorney who represented Rolls Royce in that suit was Donald Little, the same counsel who now

3

represents Gage in the instant suit. That suit settled in 2012. *See* Final Judgment issued April 24, 2012, Dkt. No. 204 in A-10-CV-367 LY.

## Gage's First FCA Lawsuit

Five months after the dismissal of *Davis I*, Gage, now represented by Donald Little—Rolls-Royce's counsel of record in *Davis I*—filed a False Claims Act case against CSS, Orion Air Group, L.L.C., Bombardier, Inc., Northrop Grunman Corporation and Steve Davis, individually. The suit alleged that the defendants participated in a scheme to defraud the government, contending that CSS and Bombardier supplied non-conforming parts to Orion, who installed them on aircraft as Northrop's subcontractor, all in violation of contractual or regulatory requirements. *USA ex. rel. Gage v. Davis SR Aviation, et al,* A-12-CV-904 SS (W.D. Tex. 2012) (*Davis II*). Specifically, Gage alleged that "defendants conspired together to submit false claims for payment to the United States Government under USAF Contract Number FA8276-C-0010 awarded on June 24, 2009 and received payments for false claims to the U.S. Government." Dkt. No. 46 at ¶16 in *Davis II*. Gage asserted that he learned of these alleged false claims during his review of Rolls-Royce documents while employed as an expert for Rolls-Royce during the *Davis I* litigation.

The *Davis II* defendants moved to dismiss the suit, contending that his claims were barred by the FCA's public disclosure bar and, alternatively, that Gage failed to plead sufficient facts to meet Rule 9(b)'s particularity requirements. Judge Sparks agreed and on July 2, 2014, dismissed *Davis II* with prejudice, stating:

> Despite its length, the Third Amended Complaint is no more effective at pleading a False Claims Act claim than the prior complaints. This case has been pending in this Court since September 27, 2012. Gage has been given ample time and multiple opportunities to plead his case. He was previously instructed his Third Amended Complaint would be his "final opportunity" to plead the facts necessary to survive

4

> a Rule 12 motion. Order of Feb. 14, 2014[# 40], at 3. Gage has instead chosen to continue his pattern of scattershot pleadings. His responses are generally untimely, and followed almost immediately by requests to correct them or requests for additional time to respond. Most are accompanied by seemingly random documents attached as exhibits. Gage continues to insist on having an "evidentiary hearing," despite the posture of this case at the Rule 12 stage. If there is a legitimate False Claims Act case buried underneath this mess, the Court cannot find it. For the reasons stated below, this case is dismissed.

*Davis II,* 2014 WL 3007201, at *2 (W.D. Tex. July 2, 2014).

Gage then appealed to the Fifth Circuit. While his appeal was pending, Gage filed a Rule 60(b) motion for relief from judgment claiming he had discovered new evidence, and requesting the District Court to perform an *in camera* inspection of certain documents. The District Court dismissed the Rule 60(b) motion for lack of jurisdiction, since the case was pending on appeal. Dkt. No. 84 in *Davis II*. The Fifth Circuit disagreed and remanded the case to the District Court so that it could reach the merits of the motion. Dkt. No. 94 in *Davis II*. On remand, the District Court denied the Rule 60(b) motion on its merits finding that there was no "newly discovered evidence" suggesting Gage would be able to comply with Rule 9(b) or that he was entitled to the Rule 60(b) extraordinary remedy. Dkt. No. 95 in *Davis II*. On July 14, 2015, the Fifth Circuit affirmed the District Court's dismissal of Gage's case finding that Gage had failed to comply with Rule 9(b). *United States ex rel Gage v. Davis S.R. Aviation, L.L.C., et al.*, 623 F. App'x 622, 628 (5th Cir. 2015). The Supreme Court denied certiorari. *United States ex rel Gage v. Davis S.R. Aviation, L.L.C., et al.*, 136 S.Ct. 984 (2016).

Meanwhile, on October 29, 2015, Gage filed a "Motion to Recuse Judge Sam Sparks" which was denied by the Chief Judge. Dkt. No. 99 in *Davis II*. On November 12, 2015, Gage filed his third appeal to the Fifth Circuit challenging the District Court's rulings on the Rule 60(b) Motion

5

and the Motion to Recuse. On July 25, 2016, the Fifth Circuit affirmed the District Court's rulings. See *United States ex rel Gage v. Davis S.R. Aviation, L.L.C., et al.*, 658 F. App'x 194 (5th Cir. 2016). On February 21, 2017, the Supreme Court denied Gage's petition for writ of certiorari. *United States ex rel Gage v. Davis S.R. Aviation, L.L.C., et al.*, 137 S.Ct. 1072 (2017).

## The Present Case

Undeterred, on June 27, 2016, while still represented by Donald Little, Gage filed the instant lawsuit against Rolls-Royce and Sierra Nevada Technical Services, Inc., formerly Orion Air Group, L.L.C., based on the same underlying facts as at issue in *Davis II,* and for the most part *Davis I*. In fact, Gage brings the exact same claims in this lawsuit as in *Davis II,* but this time asserts them against the party that hired him as an expert in *Davis I* —Rolls-Royce—as well as against Sierra Nevada. Just as he did in *Davis II*, Gage alleges that the Defendants were involved in a conspiracy to use non-airworthy parts (from the crashed aircraft in Nova Scotia) on a USAF aircraft, and the parts failed during a flight in Afghanistan. Gage further alleges that the Defendants submitted false documents and invoices to the United States in connection with their subcontract agreement, in violation of the FCA.

On September 19, 2017, Rolls-Royce filed a Motion to Dismiss (Dkt. No. 58) arguing that Gage's lawsuit should be dismissed because (1) he fails to provide the details of any fraud or false claims with the particularity demanded by Rule 9(b); and (2) his recycled claims are barred by the issue preclusion doctrine.[2]

---

[2] Gage also move again for Judge Sparks to be recused from this case, which was referred to, and denied by, Senior United States District Judge David Ezra on August 23, 2017. Dkt. No. 56.

## II.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted.  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

In addition, an FCA complaint must meet the heightened pleading standard of Rule 9(b).  To allege fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.* ("*Steury I*"), 625 F.3d 262, 266 (5th Cir. 2010) (internal quotation marks and citation omitted); see also *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) ("The time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby must be stated. . .in order to satisfy Rule 9(b)." (alteration in original) (internal quotation marks and citation omitted)).

# III. ANALYSIS

## A. Post-Hearing Motions

As noted, on December 4, 2017, the Court held a hearing on Defendants' Motion to Dismiss Relator's First Amended Complaint and Motion to Disqualify Counsel. At the end of the hearing, Gage's attorney, Donald Little, asked if he could place into the record several unidentified exhibits. The Court denied the request but informed Little that he could file a motion for leave with the Court by December 14, 2017, and explain what the documents he sought to file were and why they were relevant to the pending motions.

Gage has now filed two Motions to File Under Seal Documents and Supplement Law and Facts. Dkt. Nos. 81 & 82. Rolls-Royce opposes the Motions and moves to strike the documents. Dkt. Nos. 83 & 84. Gage has failed to demonstrate how any of the documents are relevant to the issues before the Court. Gage is simply making the same arguments he has already made in this case. Because Gage has had numerous opportunities to respond to the Motion to Disqualify and Motion to Dismiss and he has failed to demonstrate good cause for submitting additional documents, Gage's Motions to File Under Seal Documents and Supplement Law and Facts (Dkt. Nos. 81 & 82) are **DENIED**. In addition, Defendants' Motions to strike the documents (Dkt. Nos. 83 & 84) are **GRANTED**. The Court also **GRANTS** Defendants' Motion to Strike Docket Entry 88 (Dkt. No. 89).

## B. Rolls-Royce's Motion to Disqualify

In its Motion to Disqualify, Rolls-Royce argues that Little should be disqualified from representing Gage in this case based on his previous representation of Rolls-Royce in the related *Davis I* case. Gage's head attorney in this case, Donald Little, was in-house counsel for Rolls-Royce

from 1997-2008. After leaving RRNA in 2008, Little continued to represent Rolls-Royce as outside counsel and was lead counsel for Rolls-Royce in *Davis I,* which involved many of the same underlying facts as the instant case. Five months after the dismissal of *Davis I*, Little and Gage filed *Davis II* alleging that the *Davis I* plaintiffs, Orion and Bombardier submitted false claims to the Government relating to the BR710A2-20 engine parts. Gage purports to have learned of the alleged false claims from his work for Rolls-Royce in *Davis I*.

A few months after *Davis II* was dismissed, Little and Gage filed this suit against Rolls-Royce, effectively repleading against Rolls-Royce the same claims he alleged in *Davis II* against other parties. Rolls-Royce has not consented to Little representing Gage in this case. Despite this, and despite the clear weight of authority and the explicit bar contained in the Texas Disciplinary Rules of Professional Conduct, preventing an attorney from suing his former client on a matter substantially related to a matter on which he represented the client,[3] Little refused to withdraw, and opposed the motion to disqualify him. Dkt. No. 60. After the hearing, during which the Court expressed that it "could not believe that you are arguing that you are not – shouldn't be disqualified from this case," and that it was "stunning" that he was taking that position, Dkt. No. 87 at 39-40, Little filed a Motion to Withdraw as Counsel (Dkt. No. 81).

Little is clearly disqualified from representing Gage in this case since: (1) he had a more-than-decade long attorney-client relationship with Rolls-Royce; and (2) there is a substantial relationship between the subject matter of the present representation and a matter on which Little previously represented Rolls-Royce, specifically *Davis I*. *See In re Am. Airlines, Inc.*, 972 F.2d 605,

---

[3] " Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if it is the same or a substantially related matter." Tex. Disc. Rule of Prof. Cond. 1.09(a).

610 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). The undersigned therefore **RECOMMENDS** that the District Court **GRANT** the Motion to Disqualify (Dkt. No. 59) as unopposed and **GRANT** Little's Motion to Withdraw as Counsel (contained within Dkt. No. 81).

**C.     Rolls-Royce's Motion to Dismiss**

In its Motion to Dismiss, Rolls-Royce argues that Gage's FCA lawsuit should be dismissed because: (1) his recycled claims are barred by the issue preclusion doctrine; and (2) he has failed to plead the details of his False Claims Act claim with the particularity demanded by Rule 9(b).[4]

**1.     Issue Preclusion**

Rolls-Royce argues that Gage is collaterally estopped from asserting the claims in this lawsuit because his claims were already adjudicated by the District Court in *Davis II*. Notably, Gage fails to respond to Rolls-Royce's arguments on this point. While Gage initially failed to respond to the issue preclusion argument altogether, he did file a late response which only argues that this case is distinguishable from *Davis I*, failing to mention *Davis II*. Dkt. No. 67. However, Rolls-Royce never argued that this case is barred by *Davis I*; rather, it argues that this case is barred by *Davis II*. Gage has failed to respond to this argument and has therefore conceded Rolls-Royce's issue preclusion argument. *See, e.g.*, *Charboneau v. Box*, 2017 WL 1159765, at *13 (E.D. Tex. Mar. 29, 2017) ("[A] plaintiff's failure to brief an argument in the plaintiff's response to a motion to dismiss generally results in waiver of such argument."); *Mayo v. Halliburton Co.*, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (same).

---

[4]As Rolls-Royce points out, the Court could grant the Motion to Dismiss as unopposed under Local Rule CV-7(e)(2) since Gage did not file a Response to the Motion by the requisite deadline of October 3, 2017. However, the Court has decided to address the merits of Rolls-Royce's arguments instead.

10

Even if Gage had not waived his argument, dismissal is nevertheless proper, as Gage is attempting to re-litigate his past failed claims, albeit against a different defendant in this case. "The rule of issue preclusion, sometimes referred to as collateral estoppel, bars relitigation by a party to a previous action of issues that were actually litigated and decided in that previous action." *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252, n. 2 (5th Cir. 1991).[5] "The purpose of issue preclusion is to prevent relitigation of issues already dealt with by the courts, so as to maximize judicial economy and minimize conflicting judgments." *Hall v. Sinn, Inc.*, 102 F. App'x 846, 848 (5th Cir. 2004); *see also, Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The doctrine also conserves judicial resources, maintains consistency and avoids oppression or harassment of the adverse party. *Hacienda Records, L.P. v. Ramos*, 2018 WL 297163, at *3 (5th Cir. Jan. 4, 2018).

Issue preclusion has three elements:

(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.

*Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999). In addition, the legal standard used to assess the issue must be the same in both proceedings. *Id.* The parties, however, need not be identical, "so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). Accordingly, the fact that Gage is suing a different defendant in this case does not bar the application of issue preclusion, as Gage is the party against

---

[5]Courts and parties use different terminology when referring to various preclusion principles, which sometimes creates confusion. *See* 18 Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE § 4402 (3d ed. 2016).

whom estoppel is being applied, and he was a party to the prior suit. *Hall*, 102 F. App'x at 848; *Next Level*, 179 F.3d at 255; *Meza v. General Battery Corp.*, 908 F.2d 1262, l273 (5th Cir. 1990).

Gage's False Claims Act allegations in this case merely restate the very same claims Gage asserted in *Davis II*. As in *Davis II*, Gage's lived pleading here alleges that the Defendants were involved in a conspiracy to use non-airworthy parts from the crashed aircraft in Nova Scotia on a USAF aircraft, which ultimately failed in flight over Afghanistan. Gage further alleges that the Defendants submitted false documents and invoices to the United States in connection with their subcontract agreement. Indeed, Gage's pleading in this case is a virtual copy of his Third Amended Complaint in *Davis II*. He has simply cut and pasted text from the *Davis II* Third Amended Complaint and placed that text in his pleading in this case, simply changing all of the references to the *Davis II* defendants to Rolls-Royce, as the primary defendant in this case. A side-by-side reading of the two Complaints reveals that they are nearly identical. These are just a few examples:

| From *Davis II*: | From this case: |
|---|---|
| This is a qui tam action against defendants involving the use of non-airworthy, unapproved, non-conforming aircraft parts from a crashed aircraft to support at all costs, including the submitting of false documents and invoices for payment to the United States Air Force (USAF), a mission critical communication platform over war ravaged Afghanistan known as the Battlefield Airborne Communication Node (BACN) under USAF Contract Number FA8276-09—C-0010. | This is a qui tam action against Defendants involving the use of non-airworthy, non-conforming aircraft parts from a crashed aircraft that Defendants had issued an advisory warning worldwide to not use such parts on any aircraft using Rolls-Royce Deutschland engines. Defendants submitted false documents and invoices for payment to the United States Air Force (USAF) under its subcontract Agreement 0079.002.000 with Sierra Technical Air Group, LLC, (hereafter referred to as "Sierra Nevada"), for a mission critical communication platform known as the Battlefield Airborne Communication Node (BACN) under USAF Contract Number FA8276-09--C-0010 issued to Northrop Grumman as prime contractor. |

12

| From *Davis II*: | From this case: |
|---|---|
| In 2009 through 2011, CSS engaged in practices where they knowingly and recklessly allowed unapproved, non-conforming and non-airworthy parts to be used from accident related aircraft on US Government leased aircraft for the Department of Defense. Payment was made to Defendants by the submission of knowingly false claims for payment to Northrop Grumman under contract to the U.S. Air Force. | In 2009 through 2012, Defendants engaged in practices where they knowingly and recklessly allowed unapproved, uninspected, non-conforming and non-airworthy parts to be used from crashed A/C 9211 on BACN Aircraft. Payment was made to Defendants by the submission of knowingly false claims for payment to Northrop Grumman under contract to the U.S. Air Force. |
| Aircraft technicians determined the cause of the catastrophic incident or event was the Variable Frequency Generator (VFG), Part Number GL511-1103-5 with Serial Number 2251, that was an accident related part off of crashed A/C 9211 sold by CSS to Orion with a false Certificate of Conformance. If the catastrophic event had occurred at cruising altitude the incident could have been much worse. | Aircraft technicians determined the cause of the catastrophic incident or event was the Variable Frequency Generator, Part Number GL5 11-1103-5 with Serial Number 2251.<br><br>Dkt. No. 17, at ¶¶ 1, 10, 59. |
| *Davis II*, Dkt. No. 46 at 2 & ¶¶ 39, 49. | |

In addition, both complaints state that Gage learned of the alleged false claims while he was working as an expert witness for Little in *Davis I*. Both complaints contain conclusory allegations that the defendants violated regulations, contractual provisions and internal quality requirements as part of a plan to submit false claims to the Government. In both complaints, Gage alleges that the conspiracy was entered into because of the need to find parts to meet the demand caused by the heavy usage of BACN aircraft during a period when there was a shortage of parts. Gage also alleges in both complaints that the parts ultimately used by the defendants were not inspected and did not receive the required certifications.

More importantly, all of the defects that led to the dismissal of the Third Amended Complaint in *Davis II* are repeated in the First Amended Complaint now before the Court, As in *Davis II*, the pleadings here fail to specify the type of inspections and certifications necessary to return parts to service or disclose who specifically failed to perform the said inspections and certifications. They also fails to detail how or why any particular certificate of conformance or FAA Form was false, or identify which defendant made the alleged false statements. The instant pleadings also fail to identify any specific invoice or false claim that was submitted for ultimate payment to the Government, detail what was false or point to which defendant made a false statement. In fact, the invoices referenced in the First Amended Complaint here are the very same invoices that Gage alleged were issued by CSS in *Davis II*. Accordingly, the first issue preclusion factor is met—Gage is attempting to re-litigate the very same False Claims Act claim that was dismissed in *Davis II*. In similar circumstances, the Fifth Circuit recently dismissed a False Claims Act suit based on issue preclusion. *United States v. Lockey*, 669 F. App'x 235, 237 (5th Cir. Oct. 4, 2016).

The second factor is also met because, as already described in detail above, the issues and the factual bases of the claims in this case were fully and fairly litigated in *Davis II* and were ultimately rejected by the District Court and Fifth Circuit. The District Court found that it lacked jurisdiction to consider the vast majority of Gage's claims because his claims under the False Claims Act were barred by the public disclosure bar since: (1) there was "a previous public disclosure of the alleged fraud in this case in the Rolls-Royce litigation before Judge Yeakel," (2) the *Davis II* case was based on those publicly disclosed allegations and (3) Gage was not the original source of the allegations. *See Davis II*, 2014 WL 3007201, at * 3-5. In the alternative, the District Court found that Gage failed to plead sufficient facts to meet Rule 9(b)'s particularity requirements with regard

to his claims under the Act. Specifically, the District Court found that Gage inadequately pled the who, what, where, and how of the alleged fraud. *Id.* at *6-8. The Fifth Circuit affirmed this ruling, holding "that this case was properly dismissed with prejudice for failure to plead fraud with particularity." *Gage*, 623 F. App'x at 628.

The last issue preclusion factor is also met since the District Court's findings that Gage's claims were barred by the public disclosure bar, and his claims failed to meet Rule 9(b)'s particularity requirements were both clearly essential to the District Court's final judgment dismissing Gage's case with prejudice.

Accordingly, Gage's present action is barred by issue preclusion. Permitting Gage to continue this action despite the District Court and Fifth Circuit's rulings in *Davis II* "would hinder judicial economy, spur vexatious litigation, and endanger stability of decisions." *Hacienda Records*, 2018 WL 297163, at *3.

### 2. Rule 9(b)

Alternatively, this case should also be dismissed because Gage has failed to once again meet the particularity requirements of Rule 9(b). "The False Claims Act is the government's primary litigation tool for recovering losses sustained as the result of fraud." *U.S. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 388 (5th Cir. 2008). Under certain circumstances, the FCA permits "suits by private parties on behalf of the United States against anyone submitting a false claim to the government." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009). "The FCA imposes civil penalties and treble damages on any person who, inter alia, 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.'" *Steury I*, 625 F.3d at 267 (quoting 31 U.S.C. § 3729(a)(1)(B)). To plead a

15

valid FCA claim Rule 9(b) requires, that, in addition to pleading the basic elements of the claim, the plaintiff must set forth the 'who, what, when, where, and how' of the alleged fraud. *Steury I*, 625 F.3d at 266. "Because the linchpin of an FCA claim is a false claim, the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008) (internal citations omitted).

The District Court and Fifth Circuit previously held that the pleadings in *Davis II*, fell short of Rule 9(b)'s requirements. *Davis II*, 623 Fed. App'x. at 625. Because he has effectively copied those same pleadings to make his First Amended Complaint here, those allegations suffer the very same problem. Gage has inadequately pled the "who" of the alleged fraudulent scheme. In addressing the "who" of the fraudulent scheme, "the identity of the person making the misrepresentation must be stated in the complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). Instead of identifying specific individual employees who made the alleged false misrepresentations, the First Amended Complaint simply points to Rolls-Royce as the "who," which is clearly insufficient. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003). While Gage once again "rattles off a list individual employees"[6] in his Reply brief, he fails to tie any particular fraudulent act to a specific person and fails to identify *who* failed to perform any required inspections or certifications, *who* violated any contract terms, *who* submitted invoices and *who* made

---

[6]*Davis II*, 2014 WL 3007201 at * 6.

16

false statements or claims. Gage's conclusory allegations are insufficient to meet the "who" mandate of Rule 9(b).

Gage has also failed to adequately plead the "what" and "how" of the fraudulent scheme allegedly committed by Rolls-Royce. To plead the "what" of a claim in an FCA case such as this, "a plaintiff must state with particularity the statute, regulation, or contract provision with which defendants have certified compliance." *Gage*, 623 Fed. App'x at 625. Gage fails to specify *what* Government specifications or requirements Rolls-Royce allegedly violated, *what* those regulations required Rolls-Royce to do, or *what* forms or invoices were submitted by Rolls-Royce. The FAC also does not supply the "how" of the alleged fraud. Gage fails to allege *how* Rolls-Royce allowed allegedly defective parts to be installed on aircraft, *how* any form or invoice submitted by Rolls-Royce was false, or *how* Rolls–Royce covered-up any fraudulent conduct. Finally, Gage also fails to plead with particularity "when" and "where" Rolls-Royce made the alleged false claims. Gage merely points to the dates of background events of this case such as the 2010 failure of the engine part in Afghanistan. Gage fails to identify *when* or *where* Rolls-Royce made any misrepresentations. While Gage has pointed to some invoices, those invoices were submitted by CSS, not Rolls-Royce.

In sum, Gage fails to sufficiently identify any material misrepresentations made by Rolls-Royce, and fails to point to any false claims submitted by Rolls-Royce. Instead, the First Amended Complaint merely contains speculative and conclusory allegations against Rolls-Royce. Despite being given numerous opportunities to provide those details to the Court and comply with Rule 9(b), Gage has failed to do so. Accordingly, Gage's FAC must be dismissed for failure to comply with Rule 9(b).

**D.     Defendant Sierra Nevada f/k/a Orion**

At the hearing, Gage's counsel, Mr. Little, conceded that Sierra Nevada had not been served in this case, and did not offer any good cause for that failure. Federal Rule of Civil Procedure 4(m) "requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) (citing Rule 4(m)). Because Defendant Sierra Nevada has not been served within the 90 day time limit in Rule 4(m), Gage's claims against it should be dismissed.

## IV.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Rolls-Royce North America Inc.'s and Rolls-Royce Deutschland, Ltd. & Co. KG's Motion to Disqualify Their Former Attorney, Donald E. Little, From Representing George Gage (Dkt. No. 59). The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Rolls-Royce North America Inc.'s and Rolls-Royce Deutschland, Ltd. & Co. KG's Motion to Dismiss Relator's First Amended Complaint (Dkt. No. 58). Lastly, the undersigned **RECOMMENDS** that the District Court **DISMISS** Sierra Nevada Technical Services, LLC under Federal Rule of Civil Procedure 4(m).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 13th day of February, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE